Next case is Karns v. Shanahan, numbers 16-2171 and 16-2172. My name is John Blore of Drinker, Biddle & Reef Pro Bono Council for the appellants. I'd like to reserve four minutes of my time for rebuttal. That will be granted. Thank you. The primary issue in this appeal concerns the Eleventh Amendment and sovereign immunity. In order to determine whether an agency is the arm of the state for purposes of sovereign immunity, the Court considers three factors stated by this Court sitting en banc in Fitchick v. New Jersey Transit. These factors were an attempt to consolidate more numerous factors that were outlined two decades prior in Urbano v. So what impact, if any, did the University of California v. Doe case have on the Fitch factors? So the intervening Supreme Court presidents, which are acknowledged in the Benn case, the primary effect of those cases were to de-emphasize the first factor. The funding factor. The funding factor as being determinative of whether sovereign immunity applies or not. The challenge I think the Court was responding to was courts looking at that first factor and sort of giving the other factors the back of the hand or ignoring where the other two factors weighed heavily in favor of immunity and nevertheless saying because the first factor weighed against immunity, we're not going to find that immunity applies. I do not believe that the intervening cases, including the Benn case out of the Third Circuit, completely de-emphasized the first factor. And I do not believe that those cases turned the Fitch test into counting up of how many factors apply in one direction versus how many. What about Mark Clare? So one of the reasonings that the district court gives for finding in favor of sovereign immunity is that the second and third factors apply in favor of sovereign immunity and it's a two-to-one test. In the litany of cases cited in the Appellee's brief, they make that same argument. All you need to do is look to see if two factors weigh in favor of one way versus one factor the other way, then that's how you decide. What about the Mark Clare case? So do you support a strictly numerical test? Absolutely not. And I don't think that the jurisprudence of this Court or the Supreme Court requires that kind of test. I think Fitchek was clear that it's a balancing test, that it's nuanced, that you look at each factor and you weigh how much it weighs in favor of immunity or not. In fact, Fitchek, if you look through the factors, it weighs them differently. The first factor says this is very heavily in favor of denying immunity. It goes to the second and third factors and it says these are more checkered. There's points and facts in both directions that support and don't support top immunity. So while we ultimately decide that they weigh in favor of immunity, those slight factors in favor of immunity don't outweigh the strong factor in favor of immunity from the first factor. So I think that's what the court has. Let me ask you something else, too. In weighing this, we have to consider, too, how New Jersey transit has changed since the time of Fitchek. And my understanding is that there is no significant change, that items cited by the appellees as change are items that were considered by the dissent in Fitchek, so obviously considered by the majority, too, or really are insignificant. If there is no significant change in New Jersey transit, are we bound by Fitchek? I believe that that is the case. I think that the test has been refined, but that the decision in Fitchek didn't depend on the primacy of the first factor. The court there, sitting en banc, considered all the factors, all the Urbano sub-factors, and in doing so they came to the conclusion that this court should come to today. There are no intervening facts. Nothing has changed. Maybe the amount of funding goes one way or the other, depending on the annual budget, but none of the factors that were examined by the court in Fitchek ultimately change based on intervening fact, because there was no change in intervening fact. New Jersey transit is still self-insured. Its most significant source of revenue is still passenger fares. It has the ability to borrow funds on its own. The state is still under no obligation to pay its debts or any judgments against it. Regarding the other two factors, the same board of governors, governor-appointed board, still applies. Fitchek obviously examined that. They examined the appointees and the veto power, and they still determined after engaging in that analysis that it's checkered. For the second and third factors, there are points in favor of immunity and there are points against it, and while the points in favor of immunity may outweigh the points against immunity for those factors, it was only slight. It was only a little bit in favor of immunity, and those two factors weighing a little bit in favor of immunity did not outweigh the first factor, which it found weighed heavily against immunity. You made an argument in your brief along these lines that collateral estoppel might – I know you didn't write the brief, I guess, but an argument was made that collateral estoppel might bar an 11th Amendment immunity defense here. If that's the case, wouldn't collateral estoppel have the effect of making Third Circuit law take precedence over perhaps later Supreme Court law? I think obviously an intervening change in the law affects collateral estoppel, but here the intervening change in the law doesn't affect the court's reasoning in Fitchek and doesn't affect the rationale behind it. But how can you say that? Fitchek made it clear that the most important factor was the funding factor, and then you have Ben and more recently Montclair. Montclair says we now treat all Fitchek factors as co-equals with the funding factor breaking the tie. So isn't this a sea change in the way we evaluate these Fitchek factors? I don't believe it is. I'm sorry, I do believe it is a change. I don't believe it's a sea change. First, I think as the recent Montclair case acknowledged, it still remains a tiebreaker. So the first factor is still given primacy. I think the fact that the court has acknowledged that the first factor is a tiebreaker inherently acknowledges that these factors must be weighed. They can't just be counted because otherwise there would be no need for a tiebreaker. There would always be a 2-1 or 3-0 ruling when you balance the factors. So, yes, I believe that the court has de-emphasized the first factor, but I also think that as the Third Circuit and the Supreme Court have acknowledged post-Ben that the first factor is still very important. This court, quoting the Supreme Court in the Hess case, said that the principal rationale behind the 11th Amendment, protection of the sovereignty of states through the prevention of federal court judgments that must be paid out of the state treasury, should remain our prime guide. And that's why it determines that it's the tiebreaker in these cases. Maybe let's move on to the individual capacity claims and qualified immunity. Sure. So for qualified immunity, I think there's two. I'll start with the Fourth Amendment arguments. For the Fourth Amendment, I think it's quite simple. There are three acts that are at issue here. Let's talk about photographing the police. Sure. There's quite a bit of litigation in that world. Yes. As we sit here today, the law is not clear on that issue. Understood. Do you agree with that proposition? I do agree with that proposition. Then how can they not be qualified immunity if the law is not clear? Well, for purposes of the Fourth Amendment, it has to deal with whether there's probable cause for arresting these gentlemen. The recording is a First Amendment, isn't it? It was a seizure. You're referring to the seizure as a result of recording. Yes. That's what you intended as the Fourth Amendment. Yes. Or I could address the First Amendment if you prefer that. Go ahead. So for the Fourth Amendment, there are three actions that are at issue here. Preaching without a permit, not providing identification, and then the attempt to record the interaction with one of the appellant's cell phones. Focusing on the third, there's no way that that act is a violation of any of the three criminal statutes that the appellants were charged with. It has no bearing on the trespassing issue. It has no bearing on the obstruction issue because there's no physical obstruction or intimidation or threat associated with it. Wouldn't you agree that there was an arrest? We have to agree with only one of them, right? And then qualified immunity would apply. Sure. And I think the issue is that none of them can be agreed with. I think if you look at the… Not the trespass one or the trespass? I think the trespass one is the easiest one not to agree with. The basis for the trespass statute is there are three possibilities of trespass. Those are if it's actually been communicated to the person that they are trespassing and need to leave. Two, if there's a posting that trespassing is not permitted. Or three, if there's some sort of fencing or other barrier. None of those apply here. The only argument that appellees make is that they informed appellants that they couldn't preach here, and appellants stopped preaching and questioned why, questioned the permitting process. They never attempted to engage in any more speech. They never were asked to leave and refused to leave. This would be no different than any officer coming up to anyone who's making a lot of noise on a train platform and just telling them to stop and someone just questioning why, which is a fundamental point of our democracy and separates us from a police state. You left quite a lot of time for rebuttal. Maybe we can hear you on rebuttal then. Absolutely. Okay. Thank you. Thank you. Good morning. May it please the Court. Jennifer McWhirter from the New Jersey Attorney General's Office on behalf of the appellee's defendants. At least two of the three Fitchick factors weigh in favor of New Jersey Transit's immunity. Therefore, when the fact... There's two. Well, all three weigh in favor, but I think... Well, two of them weigh very weakly. I mean, that's what was found in the original Fitchick opinion. The Fitchick Court found that two of them were weak, yes. To answer your earlier question, Your Honor, what has changed in these intervening 28 years is, in addition to the balance, we have 28 years of experience, 28 more years of experience with New Jersey Transit. So its status in the state has become further solidified as an agency. Its state funding has continued throughout these additional 28 years. Isn't it still the same? If there are factual changes from Fitchick, did you make those clear in the district court? There are additional state court decisions finding that it's an agency of... I'm talking about in this case. In this case. Yes, in this case. Did you make... We made the argument in our brief that over these years since Fitchick, the New Jersey courts have found consistently that New Jersey Transit is a state agency. And so that kind of flushes out, you know, continues to flush out the law, and that the substantial funding has continued. We noted in our brief that for the years 2008 to 2014, New Jersey Transit operated at a $1.4 billion deficit. It's designed to rely on state funding. Is this part of the summary judgment record, specifically the change in the funding over the last 28 years? Is it part of the summary judgment record? I don't know if it's a change in the funding. It's a continuation of the funding, a continuation of the state funding. But was this part of the record? Yes. Not just argument. This is part of the summary judgment record? There's a citation to the Appropriations Act, which would show the appropriations to Transit in the record. But you're saying that that goes in your favor now? Well, so here's what... In Hess, the Supreme Court realized that circuits had been giving the funding factor not only predominant weight, but dispositive weight, and that that was wrong. And so what happened in Fitcheck is because the funding factor was found to weigh so strongly against immunity that the other two factors didn't get as robust a consideration as they should and as the dissent did in Fitcheck. And so when you give a fuller consideration, the Fitcheck majority noted that three of the seven board members are governor appointees, but, in fact, all seven are. The other four are within the advice and the consent of the Senate, but the governor appoints them. In addition, the governor has veto power. I want to point out that... Is that different than it was when Fitcheck was written? That's not different from when it was. So that's the same record? That's the same. But there are additional factors that the majority didn't expressly mention in its decision. Are these factors that were considered by the dissent? The dissent did consider most of them, yes. All right. So, obviously, the majority must have been aware of them, right? Right. Yeah, because the majority usually does read the dissent. Right. And then decides, we want to continue to decide the way we're going to. Right. Given the dispositive weight of the funding factor, however, I think it is important for this court to reevaluate all three factors and not be bound by the Fitcheck's conclusion on each factor. If this is... So do we have a sufficient record to really reevaluate the funding of the New Jersey Transit? Yes. As the Supreme Court, I'm going to quote the Supreme Court from its Hess decision. This says, where an agency is so structured that as a practical matter, if the agency is to survive, a judgment must expend itself against the state treasuries. Common sense and the rationale of the 11th Amendment require the sovereign immunity attached to the agency. And that is exactly the situation with New Jersey Transit. And so I think, based on the record and the law as it is, there is sufficient evidence for this court to reconsider all three factors. If the court feels bound by the findings in Fitcheck, at least two out of the three factors still weigh in favor of an immunity. And even if they're weak, even if they're weak, that's like Montclair State University. The court there found factors pointing both ways, and the autonomy and the status under state law factor. And that's exactly the situation here as Fitcheck found it. And so even under those circumstances, sovereign immunity attaches. What about the qualified immunity? So the question in qualified immunity is not whether the conduct amounted to a crime. Qualified immunity protects officers from making mistakes in judgment. And so the question is, is it beyond debate that the plaintiff's conduct did not amount to a crime? Don't we really have to look at probable cause? Wouldn't immunity attach if officers reasonably, but even mistakenly, conclude probable cause is present? Wouldn't qualified immunity attach? Yeah. Yes. Okay. Yes. Right. Absolutely. And so just yesterday, here we have a summer morning, two plaintiffs in jackets, with bulging pockets, carrying backpacks. They're refusing to leave. They're objecting to the, they're refuting the officer's statement that they can't be preaching without a permit. They can't be preaching on the platform. They're indicating their belief that, yes, we can. We don't need a permit. We can stay and preach. They, trying to videotape, refused, or record, refused initially to put their phones away. They refused to provide a valid ID. And so any one of those circumstances. That was you, actually. Sorry. Sounds different from back there. Can I ask you a question? There was a little bit of debt testimony that your adversary pointed out about how one of the, I guess one of the officers said the purpose of the law is to keep preachers off of the platforms or something like that. The deposition testimony was geared solely at preachers. And so the plaintiff's counsel's questions of the defendant officers were exclusively about preachers. Expressly, he said, I'm only asking you about preachers. And so the testimony was limited to that. And so it doesn't give any indication of whether other political candidates or any other group is. That was another thing. Why not political candidates? Why shouldn't everybody get a permit? Everyone does require a permit. But they said they don't require political candidates to get permits. That question goes to the issuing of the permits, which I don't think the plaintiffs have standing to raise in this case because they never requested one. But neither is that testimony borne out by the documentary evidence, which shows the political candidates or political groups did apply for and receive permits. So I just want to step back to the qualified immunity probable cause. Just yesterday, this court issued a decision addressing whether an officer was entitled to qualified immunity when he arrested a wife for refusing to produce her husband's I.D. and her husband had been taken into custody.  And this court found that she was, excuse me, the officer was entitled to qualified immunity because there's no clearly established law that refusing to produce an I.D. does not violate probable cause. So what about the filming of the interaction, so to speak? A subject of an investigatory detention has no clearly established right to film the officers. This court found in 2013, I believe, based on June 2012 conduct, which is right at the same time as the conduct in this case, that our court case The Kelly case? True Blue Actions versus Foster. Also Kelly, which preceded that by a few years. And so I think That'd be my case. Your Honor might be very familiar with that case, yes. Where there was a video camera set up on a public sidewalk at an auction and the police officer was entitled to qualified immunity despite telling the auctioneer to turn off the camera during the confrontation. And so there is no clearly established right at that time, at least, to videotape a police officer while you're being detained. So were they charged with that? Or is that part of the obstruction charge? In this case? In this case. In this case, that's part of the obstruction charge. But it's interesting, under the obstruction statute, you can't help but notice, there's really, is there any evidence of flight, what is it, intimidating force, violence, anything like that? Under the obstruction statute? I mean, this is probably why it was dismissed eventually. After the municipal court judge upheld it, the defiant trespass charge. Again, the question comes back to whether it was clearly established that that conduct did not amount to a violation. And it is not. There's no case on point stating that that is clearly established and that, therefore, the officers basically knowingly violated these defendants' constitutional rights. If that's it, then we will say thank you and we'll hear from your advocate. I appreciate it. I just want to invite the court to reconsider all three subject factors and find that New Jersey Transit is entitled to qualified immunity. Thank you. Thank you. Responding briefly to some of the points raised by counsel, I think the most important thing is that when- Let me ask you this. Do we have to decide the Fitch issue if we find qualified immunity? You still do. Why? To see whether their defendants can be charged in their official capacity, including New Jersey Transit, which the qualified immunity is applying to the officers in their individual capacity. So I think, yes, the primary decision here is Fitch, and whether there is sovereign immunity over New Jersey Transit and the officers acting in their official capacity. I think the most important thing from New Jersey Transit's argument is that when asked to tell about the facts that have changed post-Fitchick to today, the only thing that they could point to is case law. And we know about the case law, and we know that the first factor has been deemphasized. And all that that has done is say that there has to be robust consideration to all the factors. Fitchick does that. Fitchick isn't a case where they look at the first factor and they say, look at this. The state is or isn't going to be responsible for this payment. Therefore, we've decided how the 11th Amendment should apply here. They don't do that. They go in-depth into the various other factors. They consider a dissent that also goes in-depth into those other factors. And then based on their consideration of all those factors, they weigh them against each other and they decide that sovereign immunity does not apply. Even with the intervening deemphasis of factor one, the same conclusion would still be reached. The fact that the line of SEPTA cases is a striking parallel. Pre-Ben and pre-the Supreme Court decisions deemphasizing the first factor, there was an en banc decision, I believe it was Cooper, where they determined that SEPTA, another public transportation company, wasn't entitled to sovereign immunity. And then post-Ben reconsidered it. Actually, it might be confusing. It might be Bolden was the older case, and I think Cooper is the newer case, the 2008 case, where they reconsidered those factors. And they said, we have our starting point. We know how the law has changed. Let's look at what facts have changed and what changes our analysis here, and then apply this new refined law. And they determined that sovereign immunity still did not apply. That's what the court needs to do in this case, is look at that Fitchick decision as their starting point, see if anything has changed, which the record has shown no facts have changed, and just decide whether the deemphasis of the first factor has still changed the test, that one strong factor that weighs heavily in favor of not applying sovereign immunity no longer outweighs the two checkered factors that weigh slightly in favor of immunity. The other two things I'd like to just correct for the factual record, there was talk about refusing to leave the station, refusing to put phones away. Both of these things, even if supporting the record, which I don't think they are, would be issues of fact that would preclude summary judgment. The testimony was that they were never asked to leave. They were just informed that they were operating without a permit and they needed to get a permit. They questioned why they were never asked to leave and then refused to leave, which is what might support a trespass charge. That didn't happen here. Additionally, when the phone issue was raised, they immediately put the phone away. In short, there was no conduct that could be construed as obstruction of justice or trespass that would support probable cause for criminal charges against these two gentlemen. Okay. Thank you, counsel. A quick question for you. I know you were pro bono. Was Mr. Daly also pro bono? Mr. Daly was also pro bono. Okay. Well, the court would like to thank you, your law firm, and Mr. Daly for handling this pro bono. We really do appreciate that. I believe he's enjoying retirement. I just became involved in this case last Friday. Oh, is that right? Wow. Okay. Great job. Have you argued before the court before? I was just admitted to this court the day before that. Okay. Great. This is my first trial. Great job. Thank you to you and to him, if you could pass that on, for taking this on pro bono. Absolutely. Thank you. We'll take the case under advisement. We thank both counsel for excellent work.